IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Robert Lang, | ) | Case No. 6:20-cv-00759-JD-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER & OPINION** |
| Furman University, Robert Bierly, Lisa Knight, Alex Francis-Ratte, and Katherine Palmer Kaup, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Jacquelyn D. Austin made in accordance with § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) of the District of South Carolina.[1] Robert Lang ("Plaintiff" or "Lang"), a former employee of Furman University ("Furman"), filed a lawsuit against Defendants Furman, Robert Bierly ("Bierly"), Lisa Knight ("Knight"), Alex Francis-Ratte ("Ratte"), and Katherine Palmer Kaup ("Kaup") (collectively "Defendants") alleging *inter alia* sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and defamation.[2] (DE 48, pp. 1-2.) Defendants have filed the present motion for summary judgement contending *inter alia* that Plaintiff cannot establish a prima facie case of gender-based discrimination/harassment, retaliation, or defamation.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

[2] Plaintiff's Complaint initially alleged a State law claim for civil conspiracy; however, this Court dismissed Plaintiff's civil conspiracy cause of action in a previous order. (DE 25.)

1

(DE 42.) For the reasons set forth herein, the Court adopts the Report and Recommendation and grants the Defendants' motion for summary judgment.

## BACKGROUND

A full recitation of Plaintiff's allegations is set forth in the Report and Recommendation, which the Court adopts. However, given the four objections raised by Plaintiff and for the sake of brevity, the following summary of facts is sufficient for the matters addressed herein.

Lang, a forty-one (41) year old male, was hired in 2017 as Furman's Asian Studies Program Coordinator; however, he was terminated in March 2019. (DE 51, p. 4; 48, p.18.) The record viewed in a light most favorable to Plaintiff indicates that throughout Lang's employment, he was reprimanded numerous times for failing to properly perform his job responsibilities. Such instances range from filing incorrect student names and a passport number for study abroad trips to exceeding a deadline by five days. (DE 48, pp. 4, 7.) The record further indicates that these events, along with other subsequent mistakes, caused Furman to put Lang on a performance improvement plan ("PIP") on or about August 13 or 15, 2018. (DE 48, p. 12.) Furman then extended the PIP on February 5, 2019. (DE 48, p. 16.) However, Lang was placed on administrative leave and given a no-trespass order pending Furman's investigation into a student-alcohol incident where Lang allowed a student worker, under the age of twenty-one, to transport alcohol to an event in Furman's Shi Center. (DE 48, pp. 18, 32.) Then, in March 2019, Lang was terminated and escorted by campus police, in the back of the campus police car, to and from his house to retrieve his Furman keys. (DE 48, pp. 19, 32.)

During the time leading up to his termination, in August 2018, Lang filed a formal Title IX complaint with Furman's Title IX Coordinator based on a conversation he heard between Ratte

and another person, which Lang believed was inappropriate.[3]  (DE 48, pp. 10-11.)  Furman ultimately determined that no reasonable grounds exist to believe Furman's Sexual Misconduct Policy had been violated; however, a week before Lang was terminated, Lang filed a charge of discrimination with the U.S. Department of Education's Office for Civil Rights.  (DE 48, p. 12, 19.)

Nevertheless, Plaintiff contends that he was wrongfully terminated based on his gender and his termination was in retaliation for filing a Title IX Complaint on August 15, 2018.  Further, Plaintiff's defamation claim is predicated on the fact that Furman put him on a no trespass notice pending investigation of the student alcohol incident.  As a result of the no trespass order, Furman required Plaintiff to surrender his Furman keys, which he left at home.  Furman campus police escorted Plaintiff (in the back of the police car) to his home and back to the university to retrieve Furman's keys.  (DE 48, pp. 31.)  Plaintiff claims Furman's actions insinuated misconduct on his part because he was escorted by campus police; and therefore, this act constitutes defamation.

The Report recommends granting Defendants' Motion because Ratte's comment does not constitute a hostile work environment under Title VII.  (DE 48, p. 23.)  Additionally, the Report recommends that Plaintiff's retaliation claim fails because he has not forecasted evidence that gives rise to a reasonable inference that any action taken toward him was in retaliation for any activity protected by Title VII.  (DE 48, p. 31.)  Further, the Report recommends that Plaintiff's defamation claim fails as he has not forecasted any evidence that any false statement was made or that it was published to a third party. [4]  (DE 48, p. 33.)

---

[3]     Plaintiff's Title VII claim is predicated on a statement he claims he heard Ratte make to another person.  (DE 48, p. 9.)  Specifically, Plaintiff contends "[t]here was one time when we were discussing about having [a] new Japanese language house assistant, [Ratte] said that's more of a female type position and I thought that was inapprop[]riate."  (DE 48, p. 10.)

[4]     On an unrelated matter, the Report also recommends that this Court refer an attorney misconduct matter to the Chief Judge pursuant to Local Civ. Rule 83.I.08 (D.S.C.), because throughout Plaintiff's

**DISCUSSION**

Although Plaintiff raises several objections, to be actionable, objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985) (emphasis added)). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Plaintiff has made the following objections: 1) whether the magistrate erred in resolving material facts in controversy by determining that Plaintiff's performance caused his termination, rather than his decision to allow a student worker to transport alcohol in her vehicle, 2) whether the magistrate disregarded the proximity of Plaintiff's Title IX complaints with Furman's adverse employment actions against Plaintiff, 3) whether Furman's allegation that Plaintiff violated State law when he directed a student to transport alcohol to a Furman event constitutes slander per se, 4) whether Furman's campus police escorting Plaintiff to his home and back to campus in the back seat of the police car forecasted evidence that could give rise to defamation, and 5) whether Plaintiff's

---

memorandum opposing summary judgment, Plaintiff's attorney engaged in numerous instances of unprofessional conduct toward Defendants, to include refereeing to different faculty members as Divas, Dr. OCD, Dr. Clueless, . . . . (DE 48, p. 34.) The Court addresses this objection as provided herein. See n 5 supra.

4

Counsel conduct warrants referral for disciplinary proceedings.[5]  The Court will discuss each *seriatim*.

First, Plaintiff's objection that the Report improperly resolved material facts in controversy by determining that Plaintiff's performance caused his termination as opposed to his decision to allow a student to transport alcohol is immaterial and nonsensical. (DE 51, p. 12.)  At the outset, the Court notes that Plaintiff filed his Title VII claim asserting gender discrimination/hostile work environment, not whether he was wrongfully terminated due to his work performance or the student-alcohol incident.  Rather, Plaintiff's Title VII claim is predicated on a purported statement made by Ratte which Plaintiff purportedly overheard.  Taking this fact in a light most favorable to Plaintiff, Ratte said "[t]he Japanese language house assistant position is more of a female-type position." (DE 48, p. 10.).  Plaintiff maintains that this single comment implied that his position (program coordinator for the Asian Studies Department), which is unrelated to the Japanese language house assistant position, was best suited for females, is gender discrimination and/or a hostile work environment.  This statement alone does not support a Title VII gender discrimination claim.  Accordingly, given Plaintiff's objection to the factual issues raised by him are immaterial to the discrimination claim before the Court, *inter alia* to-wit "whether the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive

---

[5]     Lastly, Plaintiff objects to the Report's recommending referral of Plaintiff's counsel to the Chief Judge for possible misconduct pursuant to Local Civ. Rule 83.I.08 (D.S.C.), given his inflammatory and unprofessional references to several employees/defendants in his memorandum in opposition to Defendants' motion for summary judgment. Plaintiff's counsel has apologized for his advocacy and inartful use of "divas" in his objection to the Report's recommendation.  While the Court finds counsel's overzealous behavior to be unprofessional and lacking in better judgment, since counsel has acknowledged his behavior was taken as "intemperate, abusive, and/or unprofessional" and he says "[n]o harm or disrespect for the Court or the other litigants was ever intended and the undersigned apologizes profusely for such misunderstanding[,]" the Court declines to pursue this matter further.

However, counsel is reminded that this conduct is unacceptable and future lapses in better judgment will be addressed accordingly.

atmosphere[,]" summary judgment is appropriate here.  See Ocheltree v. Scollon Prods., 335 F.3d 325 (4th Cir. 2003) ("To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer.)

In addition, "[a] fact is material if proof of its existence or non-existence would affect disposition of the case under applicable law.  An issue of material fact is genuine if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021).  Although Plaintiff has raised an objection regarding whether Furman terminated him because of his performance or the student-alcohol incident this issue is irrelevant to Plaintiff's Title VII claim.  The Report correctly recommends that "the single comment allegedly made by Dr. Francis-Ratte was not sufficiently severe or pervasive to create a hostile work environment"; and therefore, Plaintiff's claim should be disposed of at summary judgment.  See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-316 (4th Cir. 2008) (collecting cases holding that complaints of rude treatment, callous behavior by superiors, or differences of opinion or personality conflicts with superiors are not actionable under Title VII).

Next, Plaintiff objects to the Report's recommendation that he cannot establish a prima facia case for retaliation.  Plaintiff contends the magistrate failed to consider the proximity of his Title IX complaints with Furman's adverse employment actions against him.  The Court disagrees.  As a threshold matter, to establish a prima facie case of retaliation, a plaintiff must demonstrate "(1) that [he] engaged in protected activity, (2) that the employer took a materially adverse action

against [him] and (3) there is a causal connection between the protected activity and the adverse action." Evans v. International Paper Co., 936 F.3d 183, 195 (4th Cir. 2019). Plaintiff has not met this prima facia showing; and therefore, the burden does not shift to the employer to articulate some legitimate, nondiscriminatory and nonretaliatory reason for the adverse employment action under McDonnell Douglas. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Nevertheless, the Report assumes *arguendo* that Plaintiff has met his burden, and therefore, tests whether Furman has a legitimate, nonretaliatory reason for terminating the Plaintiff. This assumption illustrates the gravamen and fallacy of Plaintiff's objection, which is predicated on the Report's hypothetical premise that he has made a showing a prima facie case of retaliation and Furman has not shown a legitimate nonretaliatory reason for terminating him. Thus, although placing Plaintiff on a PIP and subsequently terminating him may have coincided with Plaintiff's protected activity, Plaintiff has failed to offer sufficient evidence that Furman's actions were the result of animus and not Plaintiff's numerous prior discrepancies that placed him on this trajectory. To prevail on a Title VII retaliation claim, Plaintiff must establish a prima facie case, requiring the showing of a causal connection between any protected activity and the adverse employment action. See Guessous v. Fairview Prop. Inv., LLC, 828 F.3d 208, 217 (4th Cir. 2016). To prove a causal connection, Plaintiff must show that Furman took the adverse action "because the plaintiff engaged in a protected activity." Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

The record indicates that Plaintiff's work mistakes began in January 2018, and continued throughout his employment; however, he did not formally bring his concerns to the attention of the Title IX coordinator until August 2018. (DE 48, pp. 3, 10, 12 28-29.) Additionally, Furman continually gave Plaintiff opportunities to remedy and correct his job performance throughout his employment. Not only did Furman employees provide emailed instructions outlining steps for

7

improvement, Plaintiff was also given a several month extension of his PIP.  Thus, although Plaintiff argues that all of the complaints he made and the subsequent adverse employment actions occurred within less than a month of his complaint in an attempt to show that Furman took the adverse action because Plaintiff engaged in a protected activity through a temporal proximity theory, the Court finds this ignores Plaintiff's previous and ongoing discrepancies. (DE 51, p. 17.) See Duffey v. Wal-Mart Stores E. LP, No. 8:19-cv-00665-TMC-JDA, 2020 WL 8455086, at *9 (D.S.C. Sept. 4, 2020) (granting summary judgment against the plaintiff, noting that he pointed to "nothing to suggest that these actions on his part, so late in the process, did anything to affect the trajectory of his situation or the attitude of . . . Defendant's employees who were attempting to manage him") , Report and Recommendation adopted by 2021 WL 62163 (D.S.C. Jan. 7, 2021).

      Finally, Plaintiff objects to the Report because he contends Furman's allegation that he violated State law when he directed a student to transport alcohol to a Furman event was defamation per se.  Equally, Plaintiff argues that Furman's campus police escorting him to his home and back to campus in the back seat of the police car constitutes a statement published to third parties which forecasts evidence that could give rise to a defamation claim.  These allegations alone are insufficient to defeat summary judgment.  "In order to prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Erickson v. Jones St. Publishers, LLC, 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006).  Nevertheless, Plaintiff argues that he has forecasted sufficient evidence of a statement by insinuation because Furman campus police transported him to his house and back to campus in the back seat of a campus police car.  Plaintiff cites Tyler v. Mack without a specific objection to the Report or any

evidence in the record to establish any Furman statement or action was sufficiently false and malicious to constitute defamation under South Carolina law for this proposition. See Tyler v. Macks Stores of S.C., Inc., 275 S.C. 456, 458, 272 S.E.2d 633, 634 (1980) ("[A] defamatory insinuation may be made by actions or conduct as well as by word.").

Notwithstanding a specific objection or authority to support his claim, Furman's conduct does not rise to a level to support a claim for defamation. Although Plaintiff was riding with the campus police and the police waited outside his home while he retrieved Furman's keys, there is no evidence of an implied false and defamatory statement being made to a third party. "An insinuation is actionable only if it is false, malicious, and the meaning is plain." Conway v. S.C. Vocational Rehab. Dep't, No. 2:16-CV-3656-DCN-MGB, 2018 WL 2301849, at *5 (D.S.C. Jan. 31, 2018), report and recommendation adopted, No. 2:16-CV-3656 DCN, 2018 WL 2301848 (D.S.C. Feb. 26, 2018). Plaintiff has not forecasted any evidence that simply riding in a police car *without more* implied to his neighbors that he has been arrested for the commission of a crime. Cf. Boykin v. Van Buren Twp., No. 04-72387, 2006 WL 305751 at *14 (E.D. Mich. Feb. 9, 2006) ("Plaintiff cites no authority for the proposition that the mere act of having [p]laintiff in the back of a police car in full view of customers constitutes a defamatory statement."). Moreover, Plaintiff has not forecasted any evidence to show that any false statement was published to a third party; and therefore, Plaintiff's slander per se objection citing Holtzscheiter v. Thomson Newspapers, Inc. is misplaced.[6] See Holtzscheiter v. Thomson Newspapers, Inc., 332 S.C. 502, 506 S.E.2d 497 (1998).

---

[6] Plaintiff cites Holtzscheiter but offers no context for its application in this case. The Holtzscheiter court opined that "[i]n assessing the question of actionable per se or not, an important distinction is drawn between defamation in the form of libel and that in the form of slander. Libel is actionable per se if it involves 'written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public . . . ." Holtzscheiter v. Thomson Newspapers, Inc., at 510. "In contrast to libel, slander is actionable per se only if it charges the plaintiff

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation (DE 48) and incorporates it herein, and grants Defendants' motion, but declines to refer Plaintiff's counsel for further disciplinary proceedings.

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (DE 42) is granted; and therefore, Plaintiff's Complaint is dismissed.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Greenville, South Carolina
August 16, 2021

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified that they have the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession.") Id at 511. Since Plaintiff has failed to identify any spoke statement regarding the commission of a crime to a third party this objection is overruled.